UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| ROSENDO GARCIA-NAVARRO,<br><br>Movant,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>Respondent. | 4:16-CV-04072-KES<br><br><br><br>REPORT & RECOMMENDATION |

**INTRODUCTION**

Movant, Rosendo Garcia-Navarro, has filed a *pro se* motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.  See Civ. Docket Nos. 1 & 5.[1]  Now pending is a motion to dismiss by respondent the United States of America ("government").  See Docket No. 12.  Mr. Garcia-Navarro did not respond to the government's motion, though it has been pending for several months.  This matter has been referred to this magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) & (B) and the October 16, 2014, standing order of the Honorable Karen E. Schreier, district judge.  The following is this court's recommended disposition of the government's motion.

---

[1] Within this opinion the court cites to documents in Mr. Garcia-Navarro's civil habeas case as well as documents in his underlying criminal case.  Documents filed in his 2255 civil case will be cited "Civ. No." followed by the court's docket number for that document.  Documents filed in his criminal case will be cited "CR No."

**FACTS**

Mr. Garcia-Navarro was first named in the fifth superseding indictment filed in CR 10-40004 on March 2, 2011.  See United States v. Garcia-Navarro, CR No. 366.  He was charged with a single count of conspiracy to distribute 500 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 846.  Id.  At this point, there were six defendants named in the indictment.  Id.

Mr. Garcia-Navarro made his initial appearance in this district on March 18, 2011, at which time counsel was appointed to represent him and he was detained.  See CR Docket Nos. 374, 376, and docket entry immediately preceding Docket No. 375.

A sixth superseding indictment was filed June 7, 2012, still only charging Mr. Garcia-Navarro with the single conspiracy count, but adding four new defendants, bringing the total number of defendants to 10.[2]  See CR Docket No. 408.  A seventh superseding indictment was filed September 7, 2011, identical to the sixth indictment, but adding a forfeiture allegation against Mr. Garcia-Navarro for approximately $103,000 in currency and bank deposits.  See CR Docket No. 497.

A jury trial on this seventh superseding indictment was set for October 25, 2011.  See CR Docket No. 543.  Subsequently, the district court severed two co-defendants from the remaining eight co-defendants, set the jury trial for the two defendants on October 25, 2011, and continued the jury trial for the

---

[2] Ultimately there were 17 co-defendants in the case, but their cases were not all active at the same time.

other eight defendants, including Mr. Garcia-Navarro.[3]  See CR Docket Nos. 569 & 574.  After several continuances, Mr. Garcia-Navarro was set for jury trial on April 24, 2012.  See CR Docket No. 669.

Shortly before that April trial date, Mr. Garcia-Navarro entered into a plea agreement with the government.  See CR Docket No. 758.  The agreement called for Mr. Garcia-Navarro to enter a plea of guilty to the seventh superseding indictment, for which the criminal penalty was a mandatory minimum of 10 years' incarceration and a maximum of life in prison.  Id. at p. 2, ¶ C.  In the accompanying statement of factual basis for the plea, Mr. Garcia-Navarro admitted to personally obtaining and distributing 500 grams or more of methamphetamine in the St. Cloud, Minnesota, area.  See CR Docket No. 759.

Mr. Garcia-Navarro orally changed his plea to "guilty" on April 13, 2012.  See CR Docket No. 761.  In anticipation of the sentencing hearing, a presentence report (PSR) was prepared for the court's review.  That PSR included a calculation of Mr. Garcia-Navarro's United States Sentencing Guidelines (USSG) range.

Mr. Garcia-Navarro's counsel moved for a downward departure.  See CR Docket No. 794. In that motion, counsel specifically objected to the application of a two-point enhancement to Mr. Garcia-Navarro's United States Sentencing

---

[3] The two co-defendants who went to trial on October 25, 2011, were Viengxay Chantharath and Patricio Guzman-Ortiz.  Both were convicted at the conclusion of their joint trial on October 31, 2011.  See CR 10-40004-01 & -06, Docket No. 614.

3

Guidelines (USSG) calculation for the possession of a firearm pursuant to USSG § 2D1.1(b)(1).  See CR Docket No. 795 at pp. 1, 2-5.

Mr. Garcia-Navarro's sentencing hearing was held on July 16, 2012.  See Sentencing Transcript (ST) at CR Docket No. 924.  The district court asked defense counsel whether he and Mr. Garcia-Navarro had received and reviewed the PSR together.  Id. at p. 4.  Counsel indicated they had.  Id.  The court allowed both defense counsel and the government to address the firearms-enhancement objection to the PSR.  Id. at pp. 5-29.

The government introduced testimony at the hearing that the gun in question was located by police at a house known as the Monticello house.  Id. at pp. 6-7.  Police testified that the landlord rented the property to co-defendant Patricio Guzman-Ortiz, but that Mr. Garcia-Navarro was the main person who stayed at the house and the only person with a bed at the house.  Id. at pp. 7-8.  In addition, police surveillance showed that a car registered to Mr. Garcia-Navarro was one of the vehicles primarily seen at the Monticello house.  Id. at pp. 8-9.  Mr. Garcia-Navarro's car was also the only vehicle that was in and out of the garage, parking in the garage.  Id.  Also, garbage pulled from the Monticello house was linked to Mr. Garcia-Navarro.  Id. at p. 9.  The garbage contained receipts from several local businesses; police reviewed video footage from the businesses and identified Mr. Garcia-Navarro as the person who had made the local purchases evidenced by the receipts.  Id.  A later search of the Monticello house uncovered an assault rifle.  Id. at p. 11.  Witnesses had told police that they had seen an assault rifle in the bathroom of

the Monticello house while Mr. Garcia-Navarro was living there.  Id.  The search also turned up a handgun holster.  Id. at pp. 14-15.

After co-defendant Patricio Guzman-Ortiz was arrested, Mr. Garcia-Navarro was warned to move out of the Monticello house, which he did.  Id. at pp. 9-12.  He then moved into the Hasty house.  Id.  Again, through trash pulls and information from informants, police verified that Mr. Garcia-Navarro was living in the Hasty house.  Id.  This information included a statement from Mr. Garcia-Navarro's girlfriend's mother, who told police she visited Mr. Garcia-Navarro at the Hasty house and paid for his heating propane, which Mr. Garcia-Navarro then reimbursed her for in cash.  Id. at p. 12.  A search of the Hasty house was conducted as Mr. Garcia-Navarro was in the process of moving out.  Id. at pp. 12-13.  Another assault rifle and two boxes of ammunition were found at the Hasty house.  Id.

Finally, on March 4, 2011, the same day as the search of the Hasty house, Mr. Garcia-Navarro was found driving a Ford Ranger pick-up filled with personal items as though he was moving.  Id. at pp. 13-15.  The pick-up was searched and police found several boxes of ammunition and a handgun holster, in addition to clothing, Rubbermaid totes, toiletries, a ½ pound of methamphetamine with a high degree of purity, and $50,000 in cash.  Id.

Counsel for Mr. Garcia-Navarro argued to the court that the government had failed to adduce evidence in support of the firearms enhancement.  Id. at pp. 24-25.  Specifically, he argued many people were in and out of the Monticello house, some informants saw a gun, other informants never saw a gun, and no one ever told police they saw Mr. Garcia-Navarro with a gun in his

hands. Id. The government produced no fingerprint evidence tying Mr. Garcia-Navarro to the guns in question. Id. Finally, the evidence showed that other residences rented by Patricio Guzman-Ortiz to which Mr. Garcia-Navarro never visited also had guns, leading to the inference it was Patricio's guns that were found by police at the Monticello and Hasty houses, not Mr. Garcia-Navarro's guns. Id.

The government responded that the firearms enhancement was appropriate unless the evidence showed it was "clearly improbable" that the weapons were connected with the offense. Id. at p. 26. The government pointed out that weapons were present at the Monticello house, which was the stash house for the conspiracy. Id. The legal standard did not require the government to show personal possession by the defendant. Id.

The district court reviewed the evidence and the standard applicable to the enhancement under the USSG. Id. at pp. 29-30. The court found the government showed the guns found at the Monticello and Hasty houses were connected with drug trafficking, and that Mr. Garcia-Navarro was also connected to those houses and to the drug trafficking activity. Id. Therefore, the objection to the firearms enhancement was overruled and the court applied the enhancement in its USSG calculation. Id. at pp. 30-31.

The district court sentenced Mr. Garcia-Navarro to 230 months' imprisonment. See CR Docket Nos. 797 & 800. Mr. Garcia-Navarro took no direct appeal.

On August 26, 2015, Mr. Garcia-Navarro moved for a reduction in his sentence pursuant to 18 U.S.C. § 3582(c)(2), USSG § 1B1.10, and Amendment

782 to the USSG.  See CR Docket No. 873.  Counsel[4] on behalf of Mr. Garcia-Navarro asserted his original USSG total offense level was 37 (base offense level of 34, + 2 for specific offense characteristic (firearm), + 4 adjustment for leadership role in offense – 3 for acceptance of responsibility = 37).  Id.  Mr. Garcia-Navarro's criminal history category was I.  Id.  With a total offense level of 37 and a criminal history category of I, his original USSG range was 210 to 262 months' imprisonment.  Id.  Application of Amendment 782 reduced Mr. Garcia-Navarro's base offense level by 2, resulting in a total offense level of 35.  Id.  Counsel asserted that Mr. Garcia-Navarro's new USSG range should be 168 to 210 months' imprisonment.  Id.

The district court agreed and granted the motion, reducing Mr. Garcia-Navarro's sentence to 184 months' imprisonment.  See CR Docket No. 876.  An amended judgment reflecting the new sentence was entered on October 9, 2015.  See CR Docket No. 878.  As counsel for Mr. Garcia-Navarro pointed out, the original sentence of 230 months was the mid-point for the original USSG range and a new sentence of 184 months was the mid-point for Mr. Garcia-Navarro's USSG range as adjusted after application of Amendment 782.  See CR Docket No. 873.

Mr. Garcia-Navarro filed his current motion to vacate, correct or set aside his sentence on June 3, 2016.  See Civ. No. 1.  In that motion, Mr. Garcia-Navarro alleges the lawyer who filed his motion for sentence reduction made a mistake in calculating his USSG range by adding 2 points for a specific offense

---

[4] Counsel appointed for the sentence reduction motion was different than counsel who represented Mr. Garcia-Navarro at the trial level.

characteristic (firearm), for which Mr. Garcia-Navarro asserts he was never charged in the indictment. Id. Therefore, Mr. Garcia-Navarro asserts his total offense level should be 33, not 35, with a resulting USSG range of 135 to 168 months' imprisonment. Id.

Mr. Garcia-Navarro filed a supplement to his original § 2255 motion, asserting a claim that his trial counsel was constitutionally ineffective for failing to object to the enhancement of his base offense level under the USSG for use or possession of a firearm in connection with the offense. See Civ. Docket No. 5. He also asserts the district court committed plain error for applying the two points without submitting the matter to a grand jury first. Id.

## DISCUSSION

### A.   "Mistake" by Counsel Who Moved for Sentence Reduction

Mr. Garcia-Navarro alleged in his original § 2255 motion at Civ. Docket No. 1 that the lawyer who made the motion for his sentence reduction made a mistake in calculating Mr. Garcia-Navarro's original total offense level under the USSG. Mr. Garcia-Navarro alleges this later lawyer mistakenly represented that the firearms enhancement applied to his USSG calculation, even though it did not. As can be seen by the lengthy history of events set forth above concerning the enhancement, there was no mistake. Application of the enhancement was vigorously contested by trial counsel. The district court applied the enhancement at Mr. Garcia-Navarro's sentencing. Therefore, it was not a "mistake" by Mr. Garcia-Navarro's later lawyer to represent that that enhancement had originally been applied. Thus, the court turns to the claims

set forth by Mr. Garcia-Navarro in his supplement to his petition at Civ. Docket No. 5.

### B.     Statute of Limitations for § 2255 Motions

The government's motion to dismiss is premised on the argument that Mr. Garcia-Navarro's § 2255 motion is time-barred.  Motions under § 2255 are subject to a one-year statute of limitation that runs from the *latest* of four specified dates:

> (f)  A 1-year period of limitation shall apply to a motion under this section.  The limitation period shall run from the latest of:
>
> (1)    the date on which the judgment of conviction becomes final;
>
> (2)    the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3)    the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4)    the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

See 28 U.S.C. § 2255(f).

Only one of the above circumstances is relevant here--the date on which the judgment of conviction becomes final.  Id.  A judgment is deemed final "where the judgment of conviction was rendered, the availability of appeal exhausted, and the time for petition for certiorari had elapsed [or a petition for certiorari finally denied...]."  United States v. Johnson, 457 U.S. 537, 543, n. 8 (1982) (citation omitted); see also Clay v. United States, 537 U.S. 522, 527

9

(2003) (For the purpose of starting § 2255's one-year limitation period, "[f]inality attaches when [the Supreme] Court affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires."). The time for filing a petition for certiorari is 90 days after entry of the Court of Appeals' judgment. Clay, 537 U.S. at 525.

In this case, Mr. Garcia-Navarro did not appeal his sentence or conviction to the Eighth Circuit. Thus, he cannot receive the benefit of the 90 days allotted for filing a petition of certiorari with the Supreme Court. The district court imposed sentence upon Mr. Garcia-Navarro on July 16, 2012. Thus, for purposes of starting the statute of limitations, Mr. Garcia-Navarro's judgment of conviction became final on July 30, 2012, as he is entitled to receive credit for the fourteen days in which he could have filed a notice of appeal to the Eighth Circuit. See Fed. R. App. P. 4(b)(1)(A)(i); Moshier v. United States, 402 F.3d 116, 118 (2d Cir. 2005) (an unappealed federal criminal judgment is final for purposes of § 2255's statute of limitation [14] days after the judgment is entered); Sanchez-Castellano v. United States, 358 F.3d 424, 428 (6th Cir. 2004) (same); Kapral v. United States, 166 F.3d 565, 577 (3d Cir. 1999) ("If a defendant does not pursue a timely direct appeal to the court of appeals, his or her conviction and sentence becomes final, and the statute of limitation begins to run, on the date on which the time for filing such an appeal expired."). Thus, the statute of limitations began to run on July 30, 2012, and Mr. Garcia-Navarro had until July 30, 2013, to file a § 2255 motion. As Mr. Garcia-Navarro did not file his § 2255 motion until June 3, 2016, his motion is clearly time-barred unless equitable tolling applies.

## C.   Equitable Tolling Does Not Apply

The doctrine of equitable tolling extends to § 2255 motions. United States v. Martin, 408 F.3d 1089, 1092 (8th Cir. 2005). Equitable tolling is an extraordinary remedy used only in rare circumstances and "affords the otherwise time-barred petitioner an exceedingly narrow window of relief." Jihad v. Hvass, 267 F.3d 803, 805 (8th Cir. 2001); United States v. Riggs, 314 F.3d 796, 799 (5th Cir. 2002). " '[A]ny invocation of equity to relieve the strict application of a statute of limitations must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes.' " Jihad, 267 F.3d at 806 (quoting Harris v. Hutchinson, 209 F.3d 325, 330 (4th Cir. 2000)).

Equitable tolling is only applicable in two instances: "(1) if there are extraordinary circumstances" beyond a movant's control that would keep him from filing in a timely fashion or (2) if the government's conduct "lulled the movant into inaction through reliance on that conduct." United States v. Hernandez, 436 F.3d 851, 858 (8th Cir. 2006) (internal citations omitted). "Equitable tolling only applies when the circumstances that cause the delay in filing are 'external to the plaintiff and not attributable to his actions.' " Id. at 858 (citing Maghee v. Ault, 410 F.3d 473, 476 (8th Cir. 2005)) (additional citation omitted). Further, "[t]he petitioner must also demonstrate that he acted with due diligence in pursuing his [§ 2255] petition." E.J.R.E. v. United States, 453 F.3d 1094, 1097 (8th Cir. 2006).

Here, the court concludes that equitable tolling does not apply. Mr. Garcia-Navarro is not relying on newly discovered evidence to assert a

claim for relief under § 2255.  Instead, the grist of his motion stems back to his PSR written by United States Probation, defense counsel's pre-sentence objection to the firearms enhancement contained in the PSR, and a lengthy discussion of the applicability of the firearms enhancement at his sentencing hearing, including live testimony from a witness.  Mr. Garcia-Navarro was present during the sentencing hearing, knew that the firearms enhancement was being applied, and knew the grounds therefore at the time he was sentenced.  He should have filed a direct appeal to contest that application or, at the very least, filed his § 2255 motion within the one-year limitations period.

Mr. Garcia-Navarro also does not allege a claim of actual innocence, which is not a claim in and of itself, but merely an assertion which—if proved— opens the door to an otherwise procedurally barred claim.

Nor does Mr. Garcia-Navarro argue that some factor external to himself prevented him from filing his § 2255 motion sooner.  Even if he did assert such an argument, the burden is on him to show he acted with due diligence in pursuing § 2255 relief.  Holland v. Florida, 560 U.S. 631, 649 (2010); Williams v. Kelley, 830 F.3d 770, 773 (8th Cir. 2016).  Due diligence is shown when:

> A petitioner writes letters to his attorney asking her to file a habeas petition, contacts the court to learn about the status of his case, seeks to have his attorney removed for failure to pursue his case, and files a pro se petition the very day that he learns it is late.  In contrast, a petitioner does not act diligently when he simply assumes that his attorney is working on his case even though she does not respond to his communication and hangs up on him when he calls.

Williams, 830 F.3d at 773.

Mr. Garcia-Navarro does not demonstrate such diligence.  In fact, he has failed to respond to the government's motion to dismiss at all.  Accordingly, this court concludes his § 2255 motion is time-barred.

## CONCLUSION

Based on the foregoing facts, law and analysis, this magistrate judge respectfully recommends that the government's motion to dismiss [Docket No. 12] be granted and that Mr. Garcia-Navarro's § 2255 motion [Docket Nos. 1 & 5] be dismissed with prejudice as untimely.

## NOTICE OF RIGHT TO APPEAL

The parties have fourteen (14) days after service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained.  See FED. R. CIV. P. 72; 28 U.S.C. § 636(b)(1)(B).  Failure to file timely objections will result in the waiver of the right to appeal questions of fact.  Id.  Objections must be timely and specific in order to require *de novo* review by the District Court. Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

DATED January 24, 2017.

BY THE COURT:

*/s/ Veronica L. Duffy*
VERONICA L. DUFFY
United States Magistrate Judge